**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
(SOUTHERN DIVISION)

CHAMBERS OF
THE HONORABLE GINA L. SIMMS
UNITED STATES MAGISTRATE JUDGE

6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770

August 19, 2026

LETTER TO COUNSEL

RE: *Anna H. v. Bisignano, Commissioner of the Social Security Administration*
Civil No. GLS-25-03166

Dear Counsel:

Pending before this Court are briefs filed by Plaintiff Anna H. and the Social Security Administration and Plaintiff's Reply Brief. (ECF Nos. 12, 13, 15). Upon review of the filings and the record, the Court finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2025).

The Court must uphold the decision of the Social Security Administration ("SSA" or the "Agency") if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial-evidence rule "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig*, 76 F.3d at 589. This Court shall not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the SSA. *Id.* For the reasons set forth below, I will reverse the Commissioner's decision in part and remand the case back to the SSA for further consideration.

## I. BACKGROUND

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on December 9, 2015. (Tr. 460-465). Plaintiff also filed a Title XVI application for supplemental security income on December 15, 2015. (Tr. 466-471). In the application, the Plaintiff alleges that disability began on November 17, 2011. (*Id.*). The claim was initially denied on June 9, 2016, and upon reconsideration, denied again on September 15, 2016. (Tr. 269-276, 277-282). On September 29, 2016, Plaintiff filed a written request for a hearing, which was granted. (Tr. 283-284). An Administrative Law Judge ("ALJ") held a telephonic hearing on March 13, 2018. (Tr. 139-166). On July 11, 2018, the ALJ found that the Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act from November 17, 2011, through the date of the decision. (Tr. 213-231).

Thereafter, on December 17, 2019, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings consistent with its order. (Tr. 232-236). On remand, an ALJ held a telephonic hearing on February 24, 2021. (Tr. 87-138). On March 11, 2021, the ALJ

found that the Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act from November 17, 2011, through the date of the decision. (Tr. 237-258). On August 12, 2021, the Appeals Council vacated the hearing decision and remanded the case back to the ALJ for further review and consideration to be performed consistent with its order. (Tr. 259-265). On remand, the ALJ held a telephonic hearing on August 10, 2022. (Tr. 38-86). On September 7, 2022, the ALJ found that the Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act from November 17, 2011, through the date of the decision. (Tr. 13-37). On January 5, 2023, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision dated September 7, 2022, became the final and reviewable decision of the SSA. (Tr. 5-10). *See* 20 C.F.R. § 422.210(a).

Subsequently, on February 17, 2023, Plaintiff filed an action in the U.S. District Court-Maryland seeking judicial review of the Agency's decision, pursuant to 42 U.S.C. §405(g). (Tr. 1240-1241). On October 13, 2023, the Agency filed a motion asking the district court to remand the matter back to the Agency (Tr. 1243-1244). That same day, the district court granted the Agency's request and remanded the case back to the Agency. (Tr. 1242-1245). Following remand, on November 8, 2023, consistent with the district court's order, the Appeals Council vacated the ALJ's decision and remanded the case back to the ALJ due to an inadequate evaluation of whether the claimant could perform other work that exists in significant numbers in the national economy. (Tr. 1256-1261).

In response, an ALJ first held a telephonic hearing on March 20, 2025 and a supplemental hearing[1] on July 9, 2025. (Tr. 1185-1208). During the first hearing, Plaintiff amended her alleged onset date to November 24, 2014, and voluntarily withdrew her request for a hearing related to her Title II application. (Tr. 1121, 1160-1184). The ALJ granted Plaintiff's request. (Tr. 1122). Thus, what remained before the ALJ was Plaintiff's application for supplemental security income under Title XVI. (Tr. 1121). In addition, after the March 20, 2025 hearing, the ALJ obtained medical interrogatories from an impartial medical expert. (Tr. 1121, 2588-2595). By letter dated April 9, 2025, the SSA provided this evidence to the Plaintiff. (Tr. 1587). Plaintiff responded by letter dated April 21, 2025, and requested a supplemental hearing "if a fully favourable decision could not be issued on the current evidence." (Tr. 1121, 1592-1593).

On July 23, 2025, the ALJ issued his decision, finding that the Plaintiff was not disabled prior to January 24, 2025, but became disabled on that date and "has continued to be disabled through the date of [the ALJ's ] decision." (Tr. 1117-1145). Thereafter[2], on September 24, 2025, Plaintiff sought judicial review in the U.S. District Court-Md. of the Agency's decision, pursuant to 42 U.S.C. §405(g). (ECF No. 1).

---

[1] After the March 20, 2025 hearing, the ALJ obtained medical interrogatories from impartial medical expert, Rishi Chanderraj, M.D. (Tr. 2588-2595). This evidence was proffered to the Plaintiff by letter dated April 9, 2025. Plaintiff responded by letter dated April 21, 2025, and requested a supplemental hearing a fully favourable decision could not be issued on the current evidence. (Tr. 1121).

[2] The complete record does not reflect actions taken by the Appeals Counsel after this date. (Tr. 0001-2616).

## II. THE LAW

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is deemed to have a disability if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work . . . which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.* § 423(d)(2)(A).

To determine whether a person has a disability, the ALJ engages in the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a), 416.920(a). *See, e.g.*, *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003); *Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015). The steps used by the ALJ are as follows: step one, assess whether a claimant has engaged in substantial gainful activity since the alleged disability onset date; step two, determine whether a claimant's impairments meet the severity and durations requirements found in the regulations; step three, ascertain whether a claimant's medical impairment meets or equals an impairment listed in the regulations (the "Listings"). If the first three steps are not conclusive, i.e., a claimant's impairment is severe but does not meet one or more of the Listings, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC"). A claimant's RFC is the most that a claimant could do despite her/his limitations, through consideration of claimant's "'medically determinable impairments of which [the ALJ is] aware,' including those not labeled severe at step two." *Mascio*, 780 F.3d at 635 (alteration in original) (quoting 20 C.F.R. § 416.945(a)(2)). Also at step four, the ALJ analyzes whether a claimant could perform past work, given the limitations caused by her/his impairments. Finally, at step five, the ALJ analyzes whether a claimant could perform jobs other than what the claimant performed in the past, and whether such jobs exist in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

At steps one through four, it is the claimant's burden to show that he is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Monroe v. Colvin*, 826 F.3d 176, 179-80 (4th Cir. 2016). If the ALJ's evaluation moves to step five, the burden then shifts to the SSA to prove that a claimant has the ability to perform work and, therefore, is not disabled. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam).

## III. ANALYSIS PERFORMED BY THE ADMINISTRATIVE LAW JUDGE

In issuing his July 2025 decision, the ALJ first evaluated Plaintiff's claim by following the sequential evaluation process outlined above. (Tr. 1117-1145). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 24, 2014, the amended alleged onset date of Plaintiff's disability. (*Id.* at 1124). At step two, the ALJ found that, since November 24, 2014, Plaintiff suffered from the following severe impairments: disorders of the

spin and knee; morbid obesity; right shoulder impairment; fibromyalgia; and urinary incontinence. (Tr. 1124-1126). The ALJ found these impairments were severe because these impairments significantly limit the Plaintiff's ability to perform basic work activities as required by SSR 85-28. (*Id.*). However, at step three the ALJ also determined that none of the Plaintiff's impairments or combination of impairments met or medically equaled one or more of the Listings. (Tr. 1127-1128). Taking into account Plaintiff's severe impairments, the ALJ next assessed the Plaintiff's RFC. Despite Plaintiff's severe impairments, the ALJ determined that, since November 24, 2014, Plaintiff had the RFC:

> to perform sedentary work as denied in 20 CFR 416.967(a) except [Plaintiff] can only occasionally climb stairs, balance, stoop, kneel, and crouch. She can never climb ladders, ropes, or scaffolds, and she can never crawl. She cannot work around hazards such as moving dangerous machinery and unprotected heights. She is limited to frequent fingering, grasping, handling, and reaching from waist-to-shoulder level and can never reach overhead. She must be allowed to occasionally alternate between sitting and standing positions while at the workstation. She must be allowed to walk assisted with a cane. She cannot do fast-paced tasks such as assembly line jobs involving production quotas but can work at a consistent pace throughout the workday but not at a production rate pace where each task must be completed within a strict time deadline.

(Tr. 1128).

At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 1142). The ALJ also found that prior to the established disability onset date, the claimant was a younger individual age 18-44. (*Id.*). On that date, the claimant's age category changed to an individual closely approaching advanced age. (*Id.*).

Before making a finding regarding step five, as held above, the ALJ conducted hearings on March 20, 2025, and July 9, 2025. (Tr. 1185-1208, 1160-1184). At those hearings, a vocational expert testified, relying upon the *Dictionary of Occupational Titles.* During the March hearing, the vocational expert ("VE") testified that the Plaintiff had no relevant past work. (Tr. 1202). The ALJ asked the VE whether a hypothetical person with the same age, education, and work experience as the Plaintiff, with her RFC, would be able to perform any unskilled sedentary jobs. (Tr. 1203). The VE testified that there are unskilled sedentary jobs that this hypothetical individual would be able to perform other unskilled sedentary work existing in the national economy, e.g., call-out operator, charge account clerk, or telephone information clerk. (Tr.1203-1204).

At the July 9 supplemental hearing, the ALJ asked another VE whether a hypothetical person with the same age, education, and work experience as the Plaintiff, with her RFC, would be able to perform any unskilled sedentary jobs. (Tr. 1175-1176). The VE opined that the hypothetical individual could perform other unskilled sedentary work existing in the national

economy, e.g., document preparer, order clerk, or sub assembler. (Tr. 1176). In addition, in another hypothetical, the ALJ inquired about whether a hypothetical person would be able to perform the above-mentioned positions with any of the following limitations: (1) "can walk no longer than 15 minutes at a time;" (2) "stand no longer than 30 minutes at a time;" or (3) "stand no longer than one hour at a time, but could sit a total of six hours and walk a total of one hour, and stand a total of two hours." (Tr. 1179). The VE opined that the additional limitations did not change her testimony. (Tr. 1179).

At step five, the ALJ ultimately determined that the Plaintiff was not disabled prior to January 24, 2025 because there were jobs that existed in significant numbers in the national economy that she could perform. (Tr. 1142).

## IV. DISCUSSION

On appeal to this Court, Plaintiff contends that substantial evidence does not support the ALJ's denial of disability benefits before January 24, 2025. Plaintiff advances two arguments. First, that the ALJ erred at the third step of the sequential evaluation process by "failing to properly evaluate whether Plaintiff's impairments met or equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (ECF No. 12, "Plaintiff's Motion," p. 8). Second, that the ALJ erred by setting forth an "inadequate hypothetical to the vocational expert, which infected the RFC and step-five determinations." (*Id.,* p. 17). I find that Plaintiff's first argument is persuasive. I find that remand is appropriate for the reasons set forth below.

Plaintiff argues that the ALJ erred at step three of the sequential evaluation by failing to evaluate properly whether her impairments met or equaled the criteria in Listing 1.15, 1.16, or 1.18. (Plaintiff's Motion, pp. 11-14). In particular, she maintains that the ALJ also failed to reconcile conflicting findings between the step three determination under subpart D in Listing 1.15, 1.16, or 1.18 and the RFC limitations in fine and gross motor functioning, as defined in 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(E)(4). (*Id*., pp.14-15). Thus, Plaintiff argues that because she was precluded from overhead reaching, which is "above waist level," she was unable to "independently initiate, sustain, and complete work-related activities involving fine and gross movements," as defined in § 1.00(E)(4). (*Id*. at 16).

In response, the SSA avers that the ALJ properly determined that the Plaintiff did not meet or medically equal the criteria of Listing 1.15, 1.16, or 1.18 because the Plaintiff failed to demonstrate that she met all the requirements of the Listing. (ECF No. 13, p. 8). The SSA also argues that the ALJ considered evidence related to Plaintiff's ability to use her upper extremities to independently initiate, sustain, and complete work-related activities involving fine and gross movement, and determined that she could use her upper extremities "to care for her personal hygiene, use a computer/go online and use her phone, do crafting, and prepare meals." (*Id*., p. 9). I find neither of the SSA's arguments persuasive.

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 404.1525, and 404.1526, at step three of the sequential evaluation process, an ALJ ascertains whether a claimant's medical impairment meets

or equals an impairment listed in the regulations (the "Listings").[3] According to 20 C.F.R. § 404.1525(c)(3), each section of the Listings specifies "the objective medical and other findings needed to satisfy the criteria of that listing." For a claimant's impairment to meet a section of the Listings, it must "satisf[y] all of the criteria [set forth in that listing]." 20 C.F.R. § 404.1525(c)(3). Alternatively, if a claimant's impairment does not meet the criteria of a listing, "it can medically equal the criteria of a listing." *Id*. § 404.1525(c)(5); *see id*. § 404.1526.

In *Fox v. Colvin*, 632 F. App'x 750 (4th Cir. 2015) (per curiam), the ALJ at step three found that none of the claimant's severe impairments met or equalled any criteria in any part of the Listings. The ALJ also summarily opined that none of the evidence "show[ed] medical findings that are the same or equivalent to those of any . . . of [the Listings]," and that the ALJ had "considered, in particular, sections 9.00(B)(5) and 11.14." 632 F. App'x at 754-55. The Fourth Circuit reversed the district court's judgment finding that substantial evidence supported the ALJ's decision. Specifically, the *Fox* court found the ALJ's analysis to be defective because it was based on "conclusory statements" rather than "[a] 'specific application of the pertinent legal requirements to the record evidence.'" *Id.* at 755 (quoting *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). In addition, the *Fox* court did not find that the ALJ's failure constituted harmless error despite evidence in the record to support the notion that the claimant's impairments did not meet a listing. The Fourth Circuit made clear that it is not a reviewing court's province to analyze the evidence like an ALJ, nor should the court "speculate as to how the ALJ applied the law to [the] findings." *Id.* Rather, the ALJ must explain the evidence that he analyzed and how that translates into a claimant's failure to meet a specifically-identified listing. *Id.* Thus, per *Fox*, an ALJ's finding that a claimant does not meet or equal a listing must include: (a) a specific discussion of the claimant's record evidence that was analyzed; and (b) a clear explanation of how the ALJ applied the pertinent listing criteria to that evidence. *See id.*

Listing 1.15 covers "[d]isorders of the skeletal spine resulting in compromise of a nerve root(s)." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.15. To meet or equal Listing 1.15, the claimant's impairment must be "documented by" the following: (A) radicular distribution of pain, paraesthesia, or muscle fatigue; (B) radicular distribution of certain neurological signs; (C) findings on medical imaging of the cervical or lumbosacral spine; and (D) physical limitation of musculoskeletal functioning that has lasted or is expected to last for a continuous period of at least 12 months." *See* §§ 1.15(A)-(D).

With respect to criterion D[4], "the claimant must provide 'medical documentation' establishing one of three scenarios." *Johnson v. Acting Comm'r of Soc. Sec*., No. 24-11459, 2025 WL 671262, at *3 (11th Cir. Mar. 3, 2025) (per curiam) (citing 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.15(D)). Section D provides:

> Impairment-related physical limitation of musculoskeletal functioning

---

[3] Pursuant to 20 C.F.R. § 404.1525(a), the Listings "describ[e] for each of the major body systems impairments that [the Agency] consider[s] to be severe enough to prevent an individual from doing any gainful activity."
[4] Listing 1.16 and 1.18 contain the same subpart D criteria as Listing 1.15. 20 C.F.R. Part 404, Subpart P, App. 1 § 1.16(D); *see* 20 C.F.R. Part 404, Subpart P, App. 1 § 1.18(D).

> that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least one of the following:
>
> (1) A documented medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands; or
>
> (2) *An inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements, and a documented medical need for a one-handed, hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand*; or
>
> (3) *An inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements*.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.15(D) (emphasis added) (citations omitted). In addition, fine movements "involve use of your wrists, hands, and fingers; such movements include picking, pinching, manipulating, and fingering." *Id.* § 1.00(E)(4). With respect to gross movements, they "involve use of your shoulders, upper arms, forearms, and hands; such movements include handling, gripping, grasping, holding, turning, and reaching." *Id.* Such movements "also include exertional abilities such as lifting, carrying, pushing, and pulling." *Id.* The regulation includes examples of performing fine and gross movements: e.g., "taking care of personal hygiene, sorting and handling papers or files, and *placing files in a file cabinet at or above waist level*." *Id.* (emphasis added).

Here, the ALJ determined that Plaintiff did not meet the requirements of Listings 1.15, 1.16, 1.18 because the evidence did not "show the need for an assistive device as described in these listings," nor did "the evidence show inability to use the upper extremities for gross/fine movements as described in these listings." (Tr. 1127). The ALJ further found that there is no evidence of an "inability to use the upper extremities for fine/gross movements." (*Id*.). According to Plaintiff, "[t]he ALJ failed to resolve discrepancies between his findings and the medical evidence regarding the plaintiff's inability to ambulate effectively." (Plaintiff's Motion, p.14). Plaintiff thus asserts that the ALJ's conclusions are "flatly contradicted by the ALJ's own RFC assessment, and the decision provides no explanation for how these fundamentally inconsistent findings can be reconciled." (*Id*. at 15). Plaintiff points to the ALJ's RFC assessment where expressly found that Plaintiff "is limited to frequent fingering, grasping, handling, and reaching from waist-to-shoulder level and can *never* reach overhead" and "she *must* be allowed to walk assisted with a cane." (*Id*. at 16) (emphasis added).

I agree that the ALJ failed to adequately analyze the facts and apply them to the criteria of subpart D in Listing 1.15, 1.16, and 1.18. Indeed, the ALJ's determination that Plaintiff is unable

to reach overhead and must be allowed to walk assisted with a cane, is consistent with the Listing. (Tr. 1128). A claimant meets the listing if he or she is unable "independently initiate, sustain, and complete work-related activities involving fine and gross movements, and a documented medical need for a onehanded" or "independently initiate, sustain, and complete work-related activities involving fine and gross movements," which include activities "above waist level." 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 1.00(E)(4), 1.15(D)(3). Accordingly, the ALJ must explain, with factual support, why a medical listing has not been satisfied at step three of the sequential analysis. *Fox*, 632 F. App'x at 755. Because "it is not [the Court's] role to speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record," the Court remands this case. *Id.*

On remand, considering the ALJ's decision to require the allowance of Plaintiff's use of a "one-handed, hand-held assistive device and preclude her from performing tasks that involve overhead reaching," the ALJ must explain whether Plaintiff meets the requirements of subpart D of Listing 1.15, 1.16, or 1.18. *See Diane K. v. Bisignano*, Civ. No. GLS-24-03631, 2025 WL 3022545, at *1 (D. Md. Oct. 29, 2025).

## V. CONCLUSION

For the reasons set forth above, consistent with sentence four of 42 U.S.C. § 405(g), the Agency's judgment is **REVERSED IN PART** due to inadequate analysis. The case is **REMANDED** for further proceedings in accordance with this opinion. I express no opinion as to whether the ALJ's ultimate finding that Plaintiff is not disabled and, therefore, not entitled to benefits, is correct. The Clerk of the Court is directed to **CLOSE** this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as such. A separate Order follows.

Sincerely,

/s/

The Honorable Gina L. Simms
United States Magistrate Judge